**In the United States District Court
For the Southern District of Texas
Corpus Christi, Division**

| | | |
|---|---|---|
| **Matthew Joseph Lucio** | § | |
| Movant, | § | |
| | § | |
| v. | § | Case No. 2:20-CV-294 |
| | § | Case No. 2:18-CR-00167(1) |
| | § | |
| **United States of America,** | § | |
| Respondent. | § | |

**MEMORANDUM IN SUPPORT OF MOVANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT A SENTENCE PURSUANT TO 28 U.S.C. § 2255 AND MOTION TO STAY AND HOLD IN ABEYANCE**

Movant, Matthew Joseph Lucio (Lucio), by and through undersigned counsel, respectfully submits this Memorandum in Support of his Motion to Vacate, Set Aside, or Correct a Sentence Pursuant to 28 U.S.C. § 2255. In addition, Lucio respectfully asks this Court to stay the scheduling order and/or hold his § 2255 motion in abeyance. In support, Lucio shows the following:

## I. BACKGROUND

### A. Procedural History

On February 28, 2018, a grand jury for the Southern District of Texas–Corpus Christi Division returned a four-count indictment against Lucio. The first two counts alleged Lucio produced child pornography in violation of 21 U.S.C. § 2251(a) and 22551(c). Counts three and four alleged enticement and coercion of a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b), on the basis that he could be

16

charged with sexual assault under Texas law; section 22.011 Texas Penal Code. Lucio pled guilty to all four counts. On April 3, 2015, the district court sentenced Lucio to life imprisonment.

Lucio timely filed a notice of appeal, in which appeal the Fifth Circuit Court of Appeals affirmed his convictions and sentence on September 17, 2019. *United States v. Lucio*, 781 Fed. App'x. 348 (5th Cir. 2019). The United States Supreme Court denied Lucio's writ of certiorari on December 9, 2019. *United States v. Lucio*, 140 S. Ct. 646 (2019). Lucio now moves to vacate his sentence pursuant to 28 U.S.C. § 2255.

Counsel has contemporaneously filed a motion to stay the scheduling order in this case and hold the litigation of this writ in abeyance because the Bureau of Prisons, specifically Tuscon USP, has restricted all communication with Mr. Lucio. He cannot correspond by mail with counsel, counsel cannot communicate with Lucio by telephone in a privileged conversation, and counsel's expert cannot visit Lucio at the facility. *See* letter[1] from Lucio (after testing positive for COVID-19) to his family and Mr. Palmer's email to counsel (attached and cumulative Exhibit 1).

The ABA guidelines recognize that counsel's ability to investigate necessarily includes seeking assistance from investigators and mitigation specialists who receive specialized training. However, the current pandemic has created a unique situation for mitigation specialists, mitigation investigations, and field investigations. These investigations are typically conducted in-person, exhaustive, and delve into every aspect of a defendant's life. Unfortunately, the pandemic has effectively made such

---

[1] Redacted expletive.

16

in-person investigations impossible. In fact, the National Association of Criminal Defense Lawyers recently addressed concerns about providing effective advocacy for habeas clients during the pandemic in another context. NACDL, *Concerning Capital Defense Practice During the Pandemic*, https://www.nacdl.org/Content/Concerning-Capital-Defense-Practice-During-the-Pan (last visited Nov. 4, 2020) (also attached as Exhibit 2). Although, this is not a death penalty case, it is a life sentence case. Such cases are qualitatively different than the mine-run case. In such cases, investigations, examination of clients, and the interview of witnesses must be conducted in person to be competently performed. One cannot conduct a habeas corpus investigation in a life sentence case over the phone.

Because counsel is also prevented from communicating with Lucio, counsel respectfully asks this Court to stay the scheduling order and/or hold Lucio's § 2255 motion in abeyance until the client can be examined by a consulting expert and the writ investigation completed.[2]

## II. GROUNDS FOR RELIEF

**Ground One: Trial Counsel was Ineffective for Failing to Investigate Constitutionality of the Third and Fourth Counts of the Indictment.**

To establish a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation "fell below an objective standard of

---

[2] The Court could employ a status report method to gauge counsel's progress in this regard. Counsel was hired on August 3, 2020, during the pandemic, to prepare this writ of habeas corpus.

16

reasonableness." *Strickland v. Washington*, 466 U.S. 668 (1984). Additionally, the petitioner must show that such deficient performance prejudiced his defense. *Id.* 687. The Supreme Court has declined to articulate specific guidelines for appropriate attorney conduct, instead emphasizing the case-by-case approach that considers "all the circumstances." *Id.*; *see also Wiggins v. Smith*, 539 U.S. 510, 533 (2003). The failure to challenge an unconstitutional statue constitutes ineffective assistance of counsel. *See e.g. Hinton v. Alabama,* 571 U.S. 263, 274 (2014)[ "An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under Strickland."].

A pretrial motion to dismiss an indictment must be seriously considered before entering a guilty plea because entering a guilty plea waives the right to appeal most issues. In fact, Lucio's guilty plea waived the right to appeal and raise a § 2255 motion unless each was based on ineffective assistance of counsel or prosecutorial misconduct. Nevertheless, Lucio's trial counsel failed to object or move to dismiss counts three and four of indictment, and never counseled Lucio about whether pleading guilty was appropriate in light of the existence of a meritorious reason to dismiss counts three and four.

Here, there is a meritorious reason to dismiss counts three and four. Specifically, counts three and four charged Lucio with two counts of coercion and enticement under 18 U.S.C. § 2422. This offense statute lowers the constitutional standard of proof needed to convict from beyond a reasonable doubt, to the much

lower standard of probable cause. *Victor v. Nebraska,* 511 U.S. 1 (1994)[proof must be beyond a reasonable doubt]. Lucio's trial counsel should have requested the reversal of Lucio's conviction of these charges based the unconstitutionality of counts three and four. These counts allowed Lucio's convictions on proof that he could be charged with a state felony offense, probable cause.

In Texas, state felony offenses may be indicted on proof of probable cause that the offense has been committed. The indictment named the offenses with which Lucio could be charged as section 22.011 sexual assault under the Texas Penal Code. The sexual assault of a child, in each count is not defined and allowed a criminal conviction upon a finding of mere probable cause. This is because the statute only requires that a person could be "charged" with a criminal offense that is the object of the charge. Being charged only requires probable cause.

By not raising a legitimate motion to dismiss because the statute is unconstitutional, the trial lawyers were ineffective. Trial counsel's failure to investigate a state statute under the circumstances of this case was unreasonable. An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland. Hinton v. Alabama,* 571 U.S. 263, 274 (2014).

**Ground Two: Trial Counsel were Ineffective for Inadequately Communicating Effect of the Plea Agreement Terms.**

A defendant's right to reasonably competent assistance of counsel under the State and Federal Constitutions extends to the plea-bargaining state of a proceeding.

*Lafler*, 566. U.S. at 162, 132 S. Ct. 1376. Accordingly, the two-part Strickland test applies. *Id*. at 162-163. Thus, to prevail on his claim of ineffective assistance at the plea-bargaining stage, the defendant must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

The first prong requires the defendant to show that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052. In the plea-bargaining context, prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings, and laws involved and then to offer his informed opinion as to what plea should be entered. *Lafler v. Cooper,* 566 U.S. 156 (2012); *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052. Counsel must not only communicate the terms of the plea offer to his client, but also the relative merits of the offer as compared to the client's chances for success at trial. *Id*. Whether there harm for failing to advise the client of what a plea agreement provides, what affect it will have on his sentence, and what he is foregoing by taking a guilty plea. The test is not whether the client would have prevailed at trial. It is whether the client was fully advised of the plea offer. *Weaver v. Massachusetts,* 137S.Ct. 1899 (2017).

Specifically, Lucio's trial counsel advised him that he should plead guilty to receive a lenient sentence. However, nothing in the plea agreement guaranteed a lenient sentence. And yet that is what they told him, that it is the only way he could get leniency. He could have pled open to the indictment and still gotten the three

16

points for acceptance of responsibility without any of the waivers in the plea agreement. Lucio was advised that he would get a sentence of ten to fifteen years because the government would not want to put the victims through a trial. It was also explained to him that by entering the plea he would not be sentenced for any of conduct that had been charged in state court, but that had been dismissed. But Lucio did get sentenced on the basis of that state conduct. And Lucio did not receive any leniency for entering the guilty plea. Nor did he receive a sentence of ten to fifteen years, but received a life sentence. Lucio did not get anything that he thought he would in the plea agreement, as explained by his trial counsel.

In sum, Lucio's trial counsel did not adequately advise Lucio about the plea agreement; the advice provided by them was incorrect. Therefore, his counsels' performance fell below an objective standard of reasonableness. *See Byrd v. Skipper*, 940 F.3d 248, 257 (6th Cir. 2019) (concluding that ignorance of the law applicable to the defendant's case coupled with the inaccurate advice counsel gave his client about the likelihood of his success at trial was sufficient to deem counsel's performance constitutionally inadequate); *Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000) (stating that "counsel must communicate to the defendant the terms of the plea offer, and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." (citation omitted)); *cf. Strickland*, 466 U.S. at 691, 104 S. Ct. 2052 (stating that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary").

Counsel were required to talk to Lucio about the loss of his right to appeal most issues including the denial of any pretrial motion, and whether a motion to dismiss counts three and four, that allowed the consideration of the state charge conduct, was meritorious enough to allow him to have a right to appeal the denial of such a motion. That would favor him entering an open plea to an indictment instead of the plea agreement.

To establish prejudice, defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The focus of the prejudice component is whether counsel's deficient performance renders the result of the trial unreliable or fundamentally unfair. *Id*. at 687. The defendant must establish a "reasonable probability of actual prejudice." *Id*. at 693. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Any amount of additional time in prison constitutes prejudice. *Glover v. United States*, 531 U.S. 198, 203 (2001). A "reasonable probability" is one that is "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

To establish *Strickland* prejudice a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Lafler,* 566 U.S. at 163, 132 S. Ct. 1376 (quotation omitted). In the context of pleas, a defendant must show the outcome of the plea process would have been different with competent advice. *Id.* If a plea bargain has been offered, a defendant has the right to effective assistance of counsel

in considering whether to accept it. *Id.* at 168, 132 S.Ct. 1376. If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in conviction on more serious charges or the imposition of a more severe sentence. Here, the harm is that Lucio could have entered an open plea or had tried the case to the bench to preserve his right to appeal the denial of a motion to dismiss counts 3 and 4. Had he tried the case to the bench and admitted his guilty or plead open, he still would have receive 3 points for acceptance of responsibility. Prevailing on the dismissal of counts 3 and 4 would have precluded consideration as relevant conduct the dismissed state case conduct that this court considered in sentencing Lucio to life. See Dkt.51, page 90-91. As here, where the lawyer misadvises his client on the plea, counsel is ineffective and the client is entitled to remand. *U.S. v. Reed,* 719 F.3d 369 (5th Cir. 2013).

The trial lawyers explained to Lucio that he should enter into the guilty plea offered because by doing so he would receive a lenient sentence. Lucio was advised that he would get a sentence of 10-15 years because the government would not want to put the victims through a trial. It was also explained to him that by entering the plea he would not be sentenced for any of conduct that had been charged in state court, but had been dismissed. But Lucio did get sentenced on the basis of that state conduct. And Lucio did not receive any leniency for entering the guilty plea. Nor did he receive a sentence of 10-15 years. Lucio was sentenced to life.

**Ground Three: Trial Counsel was Ineffective for Failing to Investigate Lucio's Medical History and His Mitigating Evidence of a Diminished Executive Function.**

16

The Supreme Court has recognized that, "[c]riminal cases will arise where the only reasonable and available defense strategy requires consultation with experts or introduction of expert evidence." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011). Consequently, failing to consult experts, or limiting investigation into potential mitigation evidence, amounts to ineffective assistance of counsel. *Hinton v. Alabama*, 571 U.S. 263, 274–75 (2014); *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).

As discussed above, Lucio suffered from several cognitive disabilities. From an early age, Lucio was diagnosed with attention deficit disorder and prescribed various medications. *See* Declaration of Cecilia Lucio (attached as Ex. 3). Lucio's learning disabilities affected his school performance and ability to function in normal settings. Lucio's parents later learned that his poor reading and writing skills, disorganization, and inattentiveness were caused by his underlying learning disabilities. *See* Declaration of Cecilia Lucio (attached as Ex. 3). Additionally, Lucio suffered from epileptic seizures, which his grandmother also experienced. *See* Declaration of Cecilia Lucio (attached as Ex. 4). However, his parents mistook his seizures for drug abuse. *See* Declarations of Cecilia Lucio and Robert Lucio (attached as Ex. 3). After having Lucio examined, a doctor prescribed him Depakote for his seizures. *See* Declaration of Cecilia Lucio (attached as Ex. 3).

This information was presented to the trial court. However, what is glaringly absent from the evidence presented in this case is the brain damage Lucio suffered from numerous head injuries. There is no investigation of this, and no evidence presented through an expert about how this impaired Lucio's executive function, and

16

how it impacted his culpability. *See* Declaration of Cecilia Lucio (attached as Ex. 3) (noting that Lucio fell out of his crib, hitting his head as an infant; how he was attacked and beaten with a bat over his head; how he fell on the floor, hitting his head on the concrete during an epileptic seizure; how he was in a car accident with a front end collision with a tree; and how numerous epileptic seizures caused additional head injuries).[3] Unaware of the correlation between Lucio's neurological disorders and his behavior, his parents disciplined him severely, describing this as out of control beatings. *See* Declaration of Cecilia Lucio (attached as Ex. 3). See also Photos of injuries from beating and damage to car from auto crash with tree. (attached as Ex. 4). These facts warrant an investigation into brain injuries and such injuries effect executive function and impact culpability.

Under *Strickland*, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations necessary." 466 U.S. at 690–91. Evidence regarding Lucio's learning disabilities and epileptic seizures was presented to the trial court. However, Ruben Lerma, Lucio's trial counsel, failed to investigate evidence of Lucio's brain damage resulting from numerous head injuries and his diminished executive function caused by childhood trauma and lack of emotional and social maturity. *See* Declaration of Orr regarding Statement of Lerma (attached as Ex. 5). Lerma, who has over twenty years' experience, never consulted a neuropsychologist to examine Lucio. Lerma acknowledges that his failure to investigate and produce evidence of Lucio's brain

---

[3] *See* Photos of Lucio's Injuries and Damage to His Vehicle. (attached as Ex. 4).

damage was not part of his defense strategy—it was an oversight. *See* Declaration of Orr regarding Statement of Lerma (attached as Ex. 5). Lerma also agrees that presenting such evidence would be critical and directly impact the trial court's sentencing decision. *See* Declaration of Orr regarding Statement of Lerma (attached as Ex. 5). Moreover, Lerma admits that presenting evidence of Lucio's diminished cognitive ability would probably cause a different result because it bore directly on Lucio's culpability. *See* Declaration of Orr regarding Statement of Lerma (attached as Ex. 5).

As the *Hinton* Court articulated, "The selection of an expert witness is a paradigmatic example of the type of 'strategic choic[e]' that, when made 'after thorough investigation of [the] law and facts," is 'virtually unchallengeable.'" *Hinton*, 571 U.S. at 275 (citing *Strickland*, 466 U.S. at 690). But no investigation of Lucio's brain damage and consequent impaired executive function and lower culpability was performed. Under these circumstances, counsel is ineffective. *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).

Because significant evidence regarding Lucio's culpability and executive function were unexplored and not presented to the court, he should be given a new sentencing hearing.

**Ground Four: Lucio's Plea was Entered Unknowingly and Involuntarily.**

Plea bargaining is a critical stage in the criminal justice system that benefits both parties. *Missouri v. Frye*, 566 U.S. 134, 144 (2012). However, these benefits

cannot be realized unless a criminal defendant is provided "effective counsel during plea negotiations." *Id*. Consequently, "[a]nything less . . . might deny a defendant 'effective representation by counsel at the only stage when legal aid and advice would help him.'" *Id*. (citations omitted).

Under the Fifth and Fourteenth Amendments, a defendant's Due Process are violated when he is denied the right to a jury trial because a waiver of such rights is not made voluntary and knowingly. *Brady v. United States*, 397 U.S. 742 (1970). In *Brady*, the United States Supreme Court articulated that guilty pleas must be voluntary and intelligent. *Id*. at 750. According to the Court, [w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Id*. at 748.

As discussed above, Lucio's trial counsel was ineffective for failing to investigate and advise Lucio that his charged offenses were unconstitutional, for inadequately communicating the effect of the plea agreement. Consequently, Lucio's guilty plea was not made voluntarily, knowingly, or intelligently.

Lucio's learning disability and medical history severely affected his ability to understand the significance of his plea agreement. As a first-time federal offender, he was unaware of the intricacies of the criminal justice system, the sentencing guidelines, departures and variances, and the effect of federal plea agreements. Because in state court, the state has to abide by the plea agreement, or the defendant has the right to withdraw his plea.

Lucio was unaware that he could be sentenced to life imprisonment on the entry of his plea agreement. He was misadvised he would receive leniency in exchange for entering the plea agreement. Specifically, Lucio's trial counsel advised him that he would receive a sentence of ten to fifteen years by getting leniency at sentencing through a downward departure, but his trial counsel did not explain that the trial court was not obligated to grant a downward departure.[4] Lucio also believed that he would not be sentenced for any charged conduct brought in state court that had been dismissed because his lawyers advised him of this. He and his mother were advised by counsel that if they did not finish paying the lawyer that the state charges would be revived and he would be sentenced for that conduct in that event. This evidences that the Movant and his family were told that Lucio would not be sentenced in the federal proceedings for the state charged conduct. However, he was sentenced for that state conduct in this federal proceeding, which resulted in a life sentence. See Dkt. 51, pages 90-91. And Lucio was never counseled about how his plea deal would cut him off from raising any denial of a motion to dismiss counts three and four on appeal or how he could preserve an appeal while still getting acceptance of responsibility points.

## Conclusion

Lucio's guilty plea was involuntary, unknowing, and unintelligent. His decision to plead guilty was based on trial counsel's inadequate representation and misinformation concerning what he would give up if he plead guilty and what benefits

---

[4] The basis for the downward departure was actually a variance.

16

were available under the plea agreement. He was not aware of the grounds that were available to seek to dismiss the charges in the indictment or that by pleading guilty he could not appeal the denial of such a challenge. He was advised he would obtain leniency and would not be sentenced for conduct that was previously charged in state court by accepting the guilty plea. And he was advised he would receive a 10-15-year sentence because his lawyer would ask for a downward departure. This was Lucio's first federal case.

### III.  Motion to Stay and Hold in Abeyance

Lucio respectfully asks this Court to stay the scheduling order and/or hold his § 2255 motion in abeyance.

### IV.  Request for a hearing

Lucio respectfully prays for a hearing on his writ once it has been fully prepared for the same and for other assistance that he requests from the court to develop his claims.

Respectfully submitted.

**GOLDSTEIN & ORR**

By: _____/s/ Cynthia E. Orr_____
   CYNTHIA E. ORR

   CYNTHIA E. ORR
   Bar No.: 15313350

Diem Nguyen[5]<br>
Bar No.: 24121034<br>
Aaron Diaz<br>
Bar No.: 24108453<br>
**GOLDSTEIN & ORR**<br>
310 S. St. Mary's Street<br>
29th Floor Tower Life Building<br>
San Antonio, Texas 78205<br>
Telephone: 210-226-1463<br>
Facsimile: 210-226-8367<br>
Email: whitecollarlaw@gmail.com

## Certificate of Service

I certify that a true and correct copy of this Memorandum in Support of Movant's § 2255 Motion and Motion to Stay and Hold in Abeyance was served upon the Government via electronic service on the 4th day of December, 2020.

By: _____*/s/ Cynthia E. Orr*_____
      CYNTHIA E. ORR

---

[5] Diem Nguyen and Aaron Diaz are pending admission to the Southern District of Texas.