United States District Court
Southern District of Texas
**ENTERED**
February 07, 2025
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
|   **Plaintiff/Respondent,** | § | |
| | § | |
|   **v.** | § | **CRIMINAL NO. 2:18-167** |
| | § | **CIVIL NO. 2:20-294** |
| **MATTHEW JOSEPH LUCIO,** | § | |
|   **Defendant/Movant.** | § | |

### MEMORANDUM OPINION & ORDER

Defendant/Movant Matthew Joseph Lucio, by counsel, filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 and memorandum in support (D.E. 61, 63), both of which he amended (D.E. 81, 82).[1] Pending before the Court is the United States of America's (the "Government") Motion for Judgment on the Record (D.E. 89), to which Movant has not responded. For the reasons stated herein, the Government's motion is **GRANTED**, and Movant's § 2255 motions are **DENIED**.

### I. BACKGROUND

In 2017, Corpus Christi Police Department detectives received a tip from the National Center for Missing and Exploited Children that a 30-year-old man, who was using the name "Kane Luciano" on Facebook, may have recently met with a 15-year-old girl to engage in sexual activity. Investigators determined that the man was Movant and arrested him. A search of Movant's residence revealed cameras that he could view from monitors in his bedroom, as well as marijuana, powder cocaine, crack cocaine, Xanax, drug paraphernalia, and firearms. Investigators searched Movant's cell phone and tablet and

---

1. Docket entries refer to the criminal case.

found videos depicting Movant having oral and vaginal sex with different young girls. They were able to match the girls in the videos with the images of hundreds of young females in Movant's "friends" section of his Facebook account.

Investigators interviewed 16-year-old B.S., who said she met Movant through Facebook. Movant picked her up in his car, and while they drove around, B.S. smoked a blunt, became drowsy, and passed out. She woke up the following day in her sister's apartment. B.S. recalled becoming semiconscious during the night, and Movant was lying next to her. B.S. identified herself as the person engaged in oral and vaginal sex in a video on Movant's tablet. She was unaware of the video. Investigators also found five explicit images of B.S. on Movant's cellphone.

Investigators interviewed 14-year-old A.L., who acknowledged having sex with Movant on four occasions. Movant recorded one encounter in a video found on his tablet. In the video, Movant is seen looking directly at the camera during sex.

Another victim, 13-year-old M.H., was identified after her mother reported that M.H. had been sexually assaulted. M.H. stated that she met Movant on Facebook. After communicating on Facebook Messenger, Movant picked up M.H. and took her to his house. M.H. took four Xanax pills and drank two Smirnoff alcoholic beverages. M.H. said that she was clothed before she went to bed, but woke up the next morning naked with Movant lying next to her. M.H. recalled becoming semiconscious during the night, and Movant was naked on top of her. After she awoke, Movant told her they had sex. He also showed her videos of him engaging in sexual acts with other girls.

Finally, investigators identified 15-year-old A.R., who also met Movant on Facebook and communicated with him on Facebook Messenger. The two met in person on three occasions. The first two times, Movant groped and fondled A.R. against her will. The third time, they ended up in Movant's bedroom and smoked marijuana. After A.R. declined Movant's offer to spend the night, she drank a glass of water he offered her. She then became unconscious and slept until the following afternoon. A.R. recalled regaining partial consciousness during the night and finding Movant on top of her. Once she awoke, Movant told her they had sex. He also showed her videos on his tablet of him having sex with other girls, including an 11-year-old.

All four girls tested positive for chlamydia after their encounters with Movant.

Movant was charged with two counts of production of child pornography, in violation of 18 U.S.C. §§ 2251(a) and (e), which related to him recording himself having sex with B.S. and A.L. (Counts 1 and 2). He was also charged with two counts of using a means of interstate commerce to entice a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b), which related to his communications and conduct towards M.H. and A.R. (Counts 3 and 4). Movant pled guilty to all four counts of the Indictment before Magistrate Judge Jason B. Libby. In exchange for his guilty plea, the Government agreed to recommend that Movant receive maximum credit for acceptance of responsibility and a sentence within the applicable guideline range. As part of the written plea agreement, Movant waived his right to appeal or collaterally attack his conviction or sentence, except to raise a claim of ineffective assistance of counsel.

3

Magistrate Libby accepted Movant's guilty plea after being satisfied that he was competent to enter a plea, there was a factual basis for the plea, he understood the consequences of entering a plea, and he was voluntarily and knowingly pleading guilty. Magistrate Judge Libby then ordered the probation office to prepare a presentence investigation report (PSR) and filed Findings and Recommendations on Plea of Guilty, which were adopted by this Court. Movant did not file any objections to Magistrate Judge Libby's findings.

The amended PSR (D.E. 30) calculated the total offense level for each count as 38 and applied a multiple count adjustment, which resulted in an adjusted offense level of 42. In addition to the victims identified in the indictment, law enforcement discovered ten more victims. Movant's conduct with these additional victims was generally consistent with his conduct with B.S., A.L. M.H., and A.R.—he provided drugs to the victim, engaged in nonconsensual sex with the victim, and recorded the encounter. As a result, the PSR applied a five-level enhancement under U.S.S.G. § 4B1.5(b)(1) because Movant engaged in a pattern of activity involving prohibited sexual conduct. After a three-level reduction for acceptance of responsibility, his offense level was still higher than the maximum level of 43. Though several of Movant's prior sexual assaults were reported to local law enforcement, he had never been prosecuted for any crime. With a criminal history category of I and an offense level of 43, his advisory guideline sentencing range was life imprisonment.

4

Defense counsel filed written objections to the original PSR (D.E. 24, 29), arguing that the uncharged allegations concerning ten additional victims should not be classified as relevant conduct. The amended PSR deleted these pseudo counts. He also objected to the two-level enhancement under U.S.S.G. § 2G2.1(b)(6)(B)(i) for the use of a computer as impermissible double counting.

At sentencing, Special Agent Clay Odom testified for the Government that Movant was Facebook friends with hundreds of young girls and that investigators were able to locate and identify several other victims. Many described assaults perpetrated by Movant similar to those suffered by B.S., A.L. M.H., and A.R. Most victims were minors, with the youngest being 12 years old. Two became pregnant as a result of their encounters with Movant, and they both gave birth to a child. The Court also heard victim impact statements from two of Movant's victims and the mother of a third victim.

Defense counsel offered testimony from a child evangelist who had ministered to Movant. Movant's father also testified regarding Movant's history of ADHD, seizures, and learning disabilities. Defense counsel moved for a downward variance based on Movant's substance abuse and medical conditions, emphasizing his special education eligibility due to ADHD, possible dyslexia, seizure disorder, and communication disorder that would have affected his education. Counsel explained that Movant had been raped at age 16, which caused his subsequent substance abuse and contributed to his volitional control and offense conduct.

5

The Court overruled defense counsel's remaining objection regarding the use of a computer, adopted the findings contained in the amended PSR, denied defense counsel's motion for a downward variance, and sentenced Movant to a guideline sentence of 30 years' imprisonment on Counts 1 and 2 (the statutory maximum) and life on Counts 3 and 4, to run concurrently and to be followed by a lifetime of supervised release. In imposing this sentence, the Court explained:

> Defense has identified several factors that courts do take into consideration at times, in granting a variance, but I do believe the nature of the egregious conduct here, the number of victims involved, and the different losses, harms that each have suffered, the significant time, that time period the offenses took place over this long period of time, overweigh some of the reasons the Court maybe could've considered in granting a variance, so the Court's going to deny the request for a variance. I am going to follow the guidelines here.

8/9/2018 Sent. Tr., D.E. 51 at 103:10-19.

On direct appeal, Movant alleged that: "(1) his guilty plea was not made knowingly, voluntarily, and intelligently and thus he was deprived of due process because his plea agreement lacked consideration; and (2) the district court violated Federal Rule of Criminal Procedure 11(b)(2) by accepting his involuntary guilty plea." *United States v. Lucio*, 781 F. App'x 348, 349 (5th Cir. Aug. 9, 2019). The Fifth Circuit rejected both claims and affirmed this Court's judgment. *Id.* at 349–50. The Supreme Court denied Movant' petition for a writ of certiorari on December 9, 2019. *Lucio v. United States*, 140 S. Ct. 646 (2019).

Movant, through counsel, filed a timely motion under 28 U.S.C. § 2255 on December 3, 2020. The scheduling order was later suspended so that habeas counsel could

6

complete its investigation once the Bureau of Prisons' (BOP) restrictions related to COVID-19 were lifted. In 2023, after BOP restrictions eased, Movant was able to obtain a forensic neuropsychologist evaluation and neuroimaging scans that he believed supported his § 2255 motion. On June 13, 2024, Lucio filed an amended § 2255 motion asserting the same four grounds asserted in his original § 2255 motion.

## II. MOVANT'S ALLEGATIONS

Movant argues that his trial counsel was constitutionally ineffective for: (1) failing to move to dismiss Counts 3 and 4; (2) erroneously advising Movant to accept the plea agreement and miscommunicating its terms; and (3) failing to investigate Movant's medical background and mitigating evidence of diminished executive function. Movant further claims that his plea was entered unknowingly and involuntarily due to his counsels' ineffectiveness.

## III. LEGAL STANDARDS

### A. 18 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and

7

would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

## B. Ineffective Assistance of Counsel

An ineffective assistance of counsel allegation presented in a § 2255 motion is properly analyzed under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 689 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his or her counsel's performance was both deficient and prejudicial. *Id*. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474–75 (5th Cir. 2001).

In reviewing ineffectiveness claims, "judicial scrutiny of counsel's performance must be highly deferential," and every effort must be made to eliminate "the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. An ineffective assistance claim focuses on "counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct[,]" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Id*. at 689–90. With regard to the prejudice requirement, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. If the movant fails to prove one prong, it is not necessary to analyze the other. *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address

8

both components of the inquiry if the defendant makes an insufficient showing on one");
*Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

Before deciding whether to plead guilty, a defendant is entitled to "the effective assistance of competent counsel." *Padilla v. Kentucky*, 559 U.S. 356, 364–65, (2010) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970), and citing *Strickland*, 466 U.S. at 686). *Strickland's* two-part analysis applies to claims of ineffective assistance of counsel in this context. *E.g.*, *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). During this stage of a proceeding, the Supreme Court has reiterated that counsel has "the critical obligation . . . to advise the client of 'the advantages and disadvantages of a plea agreement.' " *Padilla*, 559 U.S. at 370 (citing *Libretti v. United States*, 516 U.S. 29, 50–51 (1995)). "It is the lawyer's duty to ascertain if the plea is entered voluntarily and knowingly," and the "lawyer must actually and substantially assist his client in deciding whether to plead guilty." *United States. v. Cavitt*, 550 F.3d 430, 440 (5th Cir. 2008) (quoting and citing *Herring v. Estelle*, 491 F.2d 125, 128 (5th Cir. 1974)). "It is his job to provide the accused an understanding of the law in relation to the facts." *Id.* "The advice he gives need not be perfect, but it must be reasonably competent." *Id.* In this context, the prejudice prong requires the prisoner to demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Smith*, 844 F.2d 203, 209 (5th Cir. 1988) (quoting *Hill*, 474 U.S. at 59). "The test is objective; it turns on what a reasonable person in the defendant's shoes would do." *Id.* at 209; *accord Padilla*,

559 U.S. at 372 ("[A] petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.").

## IV. ANALYSIS

### A. Ground 1: Failure to Move to Dismiss Counts 3 and 4

Movant first claims that his trial counsel was ineffective for failing to move to dismiss Counts 3 and 4, which charged him with using a means of interstate commerce to entice M.H. and A.R. to engage in sexual activity, in violation of 18 U.S.C. § 2422(b). Movant complains that Counts 3 and 4 alleged that he could be charged for the sexual assault of a child under TEXAS PENAL CODE § 22.011, but being charged with a crime only requires probable cause; 18 U.S.C. § 2422(b) is therefore unconstitutional because it allows conviction on less than proof beyond a reasonable doubt. Movant further argues that prevailing on the dismissal of Counts 3 and 4 would have precluded consideration as relevant conduct the dismissed state case conduct the Court considered in sentencing him to life in prison.

A guilty plea waives all nonjurisdictional defects in the proceedings, including all ineffective assistance of counsel claims, except when the ineffectiveness is alleged to have rendered the guilty plea involuntary. *See United States v. Palacios*, 928 F.3d 450, 455 (5th Cir. 2019); *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983). To circumvent his waiver, Movant alleges that his guilty plea was involuntary because counsel did not properly inform him that Counts 3 and 4 were unconstitutional.

To establish a violation of 18 U.S.C. § 2422(b), the Government must prove, beyond a reasonable doubt: (1) that the defendant intended to entice, persuade, or coerce an individual to engage in any sexual activity or prostitution; (2) that the defendant used a means of interstate commerce to do so; (3) that the defendant believed the individual was a minor; and (4) that, had the sexual activity occurred, the defendant could be charged with a criminal offense under federal or state law. PATTERN JURY INSTRUCTION 2.93 – ENTICEMENT OF A MINOR, Fifth Circuit District Judges Association Pattern Jury Instructions Committee, *Pattern Jury Instructions, Criminal Cases* (2019). It is not necessary for the Government to prove that the individual was actually persuaded into engaging in the described sexual activity, as long as it proves the defendant intended to persuade the individual to engage in some form of unlawful sexual activity with the defendant and knowingly took a substantial step toward bringing it about. *Id.*

Citing *United States v. Mannava*, 565 F. 3d 412, 416–17 (7th Cir. 2009), Movant claims that "an accused must be found guilty of having violated the underlying state statute, not simply that a prosecuting authority could have persuaded a grand jury that probable cause existed to charge him." D.E. 82, p. 4. Like Movant, the defendant in *Mannava* argued, "[B]y stating that anyone who in enticing, etc., a minor 'can be *charged* with a criminal offense,' section 2422(b) denies a defendant due process of law by allowing him to be convicted on less than proof beyond a reasonable doubt." *Mannava*, 565 F.3d at 416 (emphasis in original). The Seventh Circuit agreed that, "read literally, the quoted language would make it a federal offense to engage in conduct that created only probable cause to

11

think that one had committed a criminal offense, since probable cause is all that is required to charge someone with an offense." *Id.* It then rejected this interpretation "as absurd, and therefore erroneous." *Id.* The Eleventh Circuit recognized that "the *Mannava* court seemed to be under the misimpression that § 2422(b) requires that a defendant have actually violated the listed state statute." *United States v. Jockisch*, 857 F.3d 1122, 1133 (11th Cir. 2017). However, the *Mannava* court ultimately clarified, "This is not to say that a defendant must always violate the underlying state statute in order to be convicted under section 2422(b). If state law criminalizes only the completed sexual act, section 2422(b) would still impose liability for attempting to induce or persuade a minor to engage in the act, because an attempt 'to engage in . . . any sexual activity for which any person can be charged with a criminal offense' is explicitly criminalized by that section." *Mannava*, 565 F.3d at 417.

As the Fifth Circuit and numerous other courts interpreting the statute have agreed, "[S]ection 2422(b) does not require the Government to prove that the Defendant violated (or attempted to violate) the underlying state statute; it is sufficient that the Government show if the sexual activity the Defendant enticed (or attempted to entice) the minor to engage in had [ ] taken place, the Defendant could have been charged under the state statute." *United States v. Hite*, 950 F. Supp. 2d 23, 28 (D.D.C. 2013); *see also, e.g.*, *United States v. Barlow*, 568 F.3d 215, 219 n.10 (5th Cir. 2009) ("To be clear, the statute does not require that the sexual contact occur, but that the defendant sought to persuade the minor to engage in that contact."); *Jockisch*, 857 F.3d at 1133 ("§ 2422(b) does not require that a

12

defendant actually violate the listed state statute. It requires only that the defendant entice, persuade, or induce a minor to perform acts that would violate the statute if completed, or that the defendant attempt to do so."); *United States v. Hart*, 635 F.3d 850, 855 (6th Cir. 2011) ("The government need only prove, and the jury unanimously agree, that the defendant attempted to persuade a minor to engage in sexual activity that would have been chargeable as a crime if it had been completed.").

Moreover, Movant cites no authority that has held 18 U.S.C. § 2422(b) to be unconstitutional, and the Court can find none. Rather, courts have consistently held that § 2422(b) is constitutional on due process and other grounds. *See, e.g.*, *United States v. Howard*, 766 F.3d 414, 430 (5th Cir. 2014) (collecting cases and rejecting defendant's vagueness and overbreadth challenges "in light of the unanimous persuasive authority upholding the constitutionality of § 2422(b)"); *United States v. Tykarsky*, 446 F.3d 458, 470 (3rd Cir. 2006) ("[B]oth § 2423(b) and § 2422(b) represent constitutional exercises of Congress's Commerce Clause power to regulate the use of the channels and instrumentalities of interstate commerce."); *United States v. Panfil*, 338 F.3d 1299, 1301 (11th Cir. 2003) ("We conclude that § 2422(b) is not unconstitutionally overbroad or vague."); *Peterson v. United States*, 2022 WL 5241756, at *2 (N.D. Tex. Oct. 6, 2022) (defense counsel was not ineffective for failing to challenge constitutionality of § 2422(b)); *Kamal v. United States*, 2014 WL 128860, at *3 (N.D. Tex. Jan. 14, 2014), *dismissed*, 628 F. App'x 320 (5th Cir. 2016) (same); *United States v. McDarrah*, 2006 WL 1997638, at *5 (S.D.N.Y. July 17, 2006), *aff'd*, 351 F. App'x 558 (2d Cir. 2009) (rejecting defendant's

claim "that § 2422(b) is facially unconstitutional and in violation of the Due Process Clause of the Fifth Amendment because it imports a 'probable cause' standard").

Movant has failed to show that his trial counsel was ineffective for failing to challenge the constitutionality of 18 U.S.C. § 2422(b). Accordingly, his claim in Ground 1 is denied.

## B. Ground 2: Erroneous Advice to Accept Plea Agreement

Movant next alleges that his counsel erroneously advised him to plead guilty pursuant to the plea agreement offered by the Government. Movant argues counsel should have advised him to move forward with a bench trial or open plea in order to preserve the right to appeal the denial of a motion to dismiss Counts 3 and 4 as unconstitutional. Movant further claims his counsel told him that, if he pled guilty, he would get a sentence of 10 to 15 years' imprisonment because the Government would not want to put the victims through trial; however, counsel did not explain that the Court was not obligated to impose this sentence. Movant also states that he was unaware he could be sentenced to life and claims that counsel told him and his mother that he would not be sentenced for relevant conduct that was not charged in state court.

The plea agreement did not make any representation that Movant would receive a sentence of 10 to 15 years. Rather, it stated that:

> the defendant is aware that a sentence has not yet been determined by the Court. *The defendant is also aware that any estimate of the probable sentencing range under the sentencing guidelines that he/she may have received from his/her counsel, the United States or the Probation Office, is a prediction, not*

> *a promise, and is not binding on the United States, the*
> *Probation Office or the Court.* The defendant understands that
> the sentencing range is advisory only, therefore the Court may
> impose a sentence that is lower or higher than that range. The
> United States does not make any promise or representation
> concerning what sentence the defendant will receive.

D.E. 20 ¶ 8 (emphasis added). The plea agreement also contained a waiver of Movant's

appellate rights, except to raise a claim of ineffective assistance of counsel. *Id.* ¶ 7.

Movant testified at rearraignment that he had reviewed the plea agreement,

discussed it with counsel, and understood its terms. 4/3/2018 Rearraign. Tr., D.E. 49 at

14:15–15:2. He confirmed that he had discussed with counsel and understood how his

sentence would be calculated under the Sentencing Guidelines, that he was facing a

minimum sentence of 15 years up to 30 years' imprisonment on Counts 1 and 2 and a

minimum sentence of ten years up to Life on Counts 3 and 4, and that he could not

withdraw his guilty plea if he did not receive the sentence he was hoping for. *Id.* at 20:9–

21:21, 25:18–26:11, 27:20-25. He further confirmed that no one had made any promises

about his case beyond that contained in the plea agreement. *Id.* at 30:20-23.

The Court admonished Movant that the sentencing calculations in these types of

cases can be complicated, and while "[i]t's your lawyers' responsibility to give you their

best professional judgment or estimate about what they think the guideline range will be[,]

. . . that is certainly not a promise from the Court because you have no promises from the

Court about what your guideline range would be." *Id.* at 26:12-21. Movant said he

understood. *Id.* at 26:22-23. The Court explained that it could consider aggravating and

15

mitigating circumstances at sentencing and could depart or vary from the Guidelines, and "no one can promise you today what your sentence is going to be." *Id.* at 27:12-20. Movant again said he understood. *Id.* at 27:23-25. He also confirmed that he had discussed his appellate waiver with counsel and understood it. *Id.* at 17:11–18:11.

Finally, the Court heard details about ten other victims not named in the indictment who told investigators they were sexually assaulted by Movant, including those forming the basis for state charges. *Id.* at 44:18-25. Defense counsel reserved the right to oppose evidence pertaining to these other victims at sentencing (*id.* at 48:20-23).

Movant's sworn statements in open court are entitled to a strong presumption of truthfulness. *See United States v. Lampaziane*, 251 F.3d 519, 524 (5th Cir. 2001) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." *United States v. Cothran*, 302 F.3d 279, 283–84 (5th Cir. 2002). A signed, unambiguous plea agreement is also accorded great evidentiary weight when deciding if the plea is entered knowingly. *See Bonvillan v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986).

Even if counsel incorrectly advised Movant—a scenario that is not supported by the record and the Court does not decide—there can be no prejudice because the Court advised Movant of his sentencing exposure and appellate waiver before his guilty plea. The evidence before the Court supports the finding that counsel was not ineffective and that Movant was fully aware of the consequences of his guilty plea, as the Fifth Circuit

previously held when it affirmed Movant's conviction and sentence. *See Lucio*, 781 F. App'x at 349. Accordingly, Movant's claim in Ground 2 is denied.

### C. Ground 3: Failure to Investigate Movant's Medical Background

Movant further claims that trial counsel was ineffective for failing to investigate Movant's medical history and/or present mitigating evidence of his diminished executive function. Movant concedes that evidence regarding his cognitive and learning disabilities, ADHD, and epileptic seizures was presented to the Court; however, he complains counsel failed to investigate and offer evidence of his history of mental illness, hypersexuality, substance abuse, and brain damage resulting from numerous head injuries, including: Movant falling out of his crib as an infant, hitting his head on the floor during an epileptic seizure in his early teens, a car accident, and an attack/robbery during which he was hit on the head with a baseball bat. Finally, counsel allegedly failed to investigate and offer evidence of Movant's diminished culpability due to his emotional and social immaturity caused by childhood trauma.

The record shows that trial counsel Ruben Lerma was aware of Movant's history of learning disorders and seizures. As a result, counsel obtained a Forensic Psychiatric Evaluation (D.E. 34) from Dr. John O. Lusins, III, MD, before rearraignment to confirm that Movant was competent to proceed. Dr. Lusins' report diagnosed Movant with pedophilia, depression, ADHD, and substance use disorders and described his history of childhood physical and sexual abuse, learning disabilities, hypersexuality, seizure disorder, chemical dependency, and substance abuse. *Id.* at 4–7. The report examined medical

records related to Movant's first seizure and found no evidence of brain injury attributable to childhood injuries or medical conditions. *Id.* at 6. Dr. Lusins also evaluated medical records related to Movant's 2016 assault, after which he underwent a CT scan and was diagnosed with a concussion but no other brain injury. *See* D.E. 83-6, p. 11. Dr. Lusins' report was admitted into evidence at sentencing. Additional information concerning Movant's childhood abuse, learning disability, struggle to make friends in school, early sexual experimentation, depression, and history of substance abuse was included in the PSR, which the Court also reviewed before sentencing. PSR ¶¶ 90–108. Defense counsel emphasized these issues in advocating for a below-Guidelines sentence.

Movant nonetheless claims that counsel was ineffective because he "was aware of the brain damage and lack of executive function but negligently failed to order a brain scan to investigate his condition." D.E. 82, p. 17. Movant obtained a neuroimaging scan in 2023, which revealed statistically significant volume loss in two out of 101 brain regions and that three out of 48 fiber tracts were statistically abnormal. Mindset Quantify Imaging Analysis, D.E. 83-6, pp. 3–7. According to Dr. John Matthew Fabian, Psy.D., J.D.—a forensic/clinical neuropsychologist who evaluated Movant and reviewed the neuroimaging analysis—the results yielded a "tri-diagnosis condition" of brain dysfunction, mental illness, and chemical dependency/substance abuse disorders. D.E. 83-4, pp. 28–29. This diagnosis corresponds with Movant's history of learning disorders, ADHD, epilepsy, concussions, depression, trauma, stress-related disorders, and abuse of marijuana, opioids,

cocaine, alcohol, and Xanax, and it is consistent with the evidence presented to the Court at sentencing.

The Court notes that, despite Movant's emphasis on his impaired communication skills and executive function, he was able to: create a Facebook account under a fake name; locate and befriend hundreds of young girls in his area; communicate well enough with these girls over Facebook Messenger and/or text messages to persuade them to meet him in person and arrange a time and location to meet; obtain the various illegal drugs he used to knock out and rape his victims; set up video equipment to record their sexual encounters; and, in some cases, upload child pornography he produced to various websites.

Movant has not shown that counsel failed to perform an adequate investigation into his medical or mental health history or that he would have received a lower sentence if counsel had obtained a brain scan and/or forensic neuropsychologist examination before sentencing. Accordingly, Movant's claim in Ground 3 is denied.

### D. Ground 4: Unknowing and Involuntary Plea

Last, Movant claims that counsel's ineffectiveness described in Grounds 1 through 3 of his motion rendered his guilty plea unknowing and involuntary. As explained above, Movant has failed to show his counsel was ineffective. Moreover, the Fifth Circuit previously rejected Movant's claim that his plea was unknowing and involuntary. *Lucio,* 781 F. App'x at 348. Because this claim was already raised and denied on direct appeal, Movant may not relitigate it now in a § 2255 motion. *See United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) ("It is settled in this Circuit that issues raised and disposed of in a

previous appeal from an original judgment of conviction are not considered in § 2255 Motions."). Accordingly, Movant's claim in Ground 4 is denied.

## V. REQUEST FOR HEARING

Movant has requested an evidentiary hearing on his motion. "Section 2255 requires a hearing unless the motion, files, and record of the case conclusively show that no relief is appropriate." *United States v. Santora*, 711 F.2d 41, 42 (5th Cir. 1983) (citing Rule 4(b) of the RULES GOVERNING SECTION 2255 CASES). Because the record conclusively shows that Movant is not entitled to relief on any of the grounds he asserts, his request for a hearing is denied.

## VI. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Movant has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." RULE 11, § 2255 RULES.

A certificate of appealability (COA) "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483–84). As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Movant is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. *See Jones*, 287 F.3d at 329.

## VI. CONCLUSION

For the foregoing reasons, the Government's Motion for Judgment on the Record (D.E. 89) is **GRANTED**, and Movant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 61) and amended Section 2255 motion (D.E. 81) are **DENIED**. Movant is further **DENIED** a Certificate of Appealability.

**ORDERED** on February 7, 2025.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE